UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARVA MACK, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 7807 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| THE CITY OF CHICAGO, ROBERT MAY, | ) | |
| CESAR PINTO, ANGELA MANNING, and | ) | |
| OFFICER WILLIAM MCKENNA, | ) | |
| | ) | |
| Defendants. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Marva Mack brought this suit against the City of Chicago, Robert May, Cesar Pinto, Angela Manning, and William McKenna, alleging claims under 42 U.S.C. § 1983, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Illinois law. Doc. 7. Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 20. The motion is granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Mack's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Mack as those materials allow. *See Pierce v. Zoetis*, 818 F.3d

1

274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Mack was employed by the City of Chicago's Department of Aviation. Doc. 7 at ¶ 7. After serving as an administrative assistant for twenty-one years, she was appointed to a Timekeeper IV position. *Ibid*. On or about December 5, 2014, Mack received a disciplinary write-up after Pinto, her supervisor, accused her of failing to submit time sheets for an Assistant Commissioner, even though the Assistant Commissioner was at fault. *Id*. at ¶ 9. According to Mack, this was the first of a series of "fabricated" write-ups falsely blaming her for other employees' missing time sheets. *Id*. at ¶ 10. In January 2015, Mack contacted the Office of the Inspector General to complain about those write-ups. *Id*. at ¶ 11.

On or about January 12, William Cruise approached Mack about edits submitted for the time sheets of LaToya Marks, whom he supervised. *Id*. at ¶ 12. The edits purported to reduce the number of vacation and sick days that Marks had taken, which would have qualified her for Family and Medical Leave Act ("FMLA") leave. *Ibid*. Cruise had not approved the edits and asked Mack to reject them for that reason. *Id*. at ¶ 13.

May, the Department's Director of Administration, then directed Mack to approve the edits to Marks's time sheets. *Id*. at ¶ 14. Mack refused, believing that doing so would illegally qualify Marks for FMLA leave. *Id*. at ¶ 15. May demanded that Mack give him Marks's original time sheets, and Mack refused, believing that May would make edits that would illegally provide Marks with compensation and benefits to which she was not entitled. *Id*. at ¶ 16. On or about January 15, Mack learned May was still trying to edit Marks's time sheets. *Id*. at ¶ 17. At this point, Mack notified the Foreman of Custodians, Robert Kelley, of her concerns. *Id*. at ¶ 18.

At some point thereafter, Marks was arrested and charged with falsely impersonating a peace officer. *Id*. at ¶ 19. After Marks's arrest, for which she was not disciplined, May asked Pinto to make the edits to Marks's time sheets. *Ibid*. Pinto complied. *Id*. at ¶ 20.

On March 25, a pre-disciplinary hearing was held regarding Mack's refusal to edit Marks's time sheets. *Id*. at ¶ 21. During the hearing, Mack handed over Marks's original time sheets. *Ibid*. Pinto made copies and returned the originals to Mack, who placed them in a locked desk drawer. *Ibid*. Mack was given a five-day suspension, to be served April 13-17, for withholding documents from a department official. *Id*. at ¶ 22.

In early April, Mack received a "Disciplinary Action Report" from Pinto. *Id*. at ¶ 23. The report cited "entries made into … [Marks's] CATA record which appear to have no supporting documentation," as well as Mack's allegedly removing documents from city property, lying to May about whether Mack had those documents, and withholding documents from a department official. *Ibid*. (brackets in original). Believing that she had already been disciplined for those things, Mack asked Manning, the Managing Deputy Commissioner, why the additional discipline was being imposed. *Id*. at ¶ 24. In response, Manning asked Mack for the original time sheets that Mack had produced at the March 25 hearing. *Ibid*. Mack attempted to retrieve them from her locked desk, but was unable to do so because she had left her keys at home. *Id*. at ¶ 25. On April 22, Manning and May again asked Mack to turn over Marks's original time sheets, but fearing that May would make unauthorized changes, she resisted. *Id*. at ¶¶ 26-27.

Upon arriving at work on April 23, Mack found that someone had broken into her desk and taken union files, write-ups, and Marks's original time sheets. *Id*. at ¶ 28. Mack reported the theft to the Chicago Police Department. *Ibid*. Officer McKenna, a Chicago police officer, wrote a report containing what Mack alleges to be quotations falsely attributed to her. *Id*. at

3

¶ 29. McKenna and other officers also interviewed May, who made false statements that found their way into McKenna's report and that were falsely attributed to Mack. *Id*. at ¶ 30.

Defendants (the complaint does not identify which defendant) then implemented various changes at Mack's workplace to "isolate and silence" her. *Id*. at ¶ 31. Those changes included moving Mack to empty workstations without explanation and sending a company-wide email suggesting that she would be replaced on July 1. *Ibid*. On August 3, Mack was placed on five days of administrative leave pending discharge due to "erratic and agressive [sic] behavior." *Id*. at ¶ 32 (brackets in original). On August 11, Department of Aviation Commissioner Ginger Evans terminated Mack for providing false information to the police in connection with the events of April 23, even though Mack never provided such information. *Id*. at ¶ 33.

At a December 10 arbitration hearing—presumably conducted pursuant to the collective bargaining agreement between the City and Mack's union, the American Federation of State, County, and Municipal Employees Council 31 ("AFSCME"), Doc. 29-1, to determine whether there was just cause for her termination—Officer McKenna falsely confirmed the portion of his police report that falsely attributed quotations to Mack. Doc. 7 at ¶ 34; *see* Doc. 29-2 (transcript of the hearing). On December 15, AFSCME and the City entered into a settlement agreement concerning Mack's dismissal. Doc. 26-1 at ¶¶ 1-2. The settlement agreement withdrew AFSCME's request to arbitrate Mack's dismissal, gave Mack the opportunity to resign in lieu of being terminated, and provided that the City would not contest Mack's efforts to obtain unemployment compensation. Doc. 21-1.

Mack was not made aware of any settlement discussions between AFSCME and the City, and she did not authorize AFSCME to sign a settlement agreement on her behalf or to waive any of her legal claims. Doc. 26-1 at ¶ 2. Mack was informed of the agreement only after it was

signed by AFSCME and the City; she rejected the agreement and refused to resign her employment or to sign any document indicative of a resignation. *Id*. at ¶¶ 3-4.

## Discussion

The operative complaint has five counts. Count I alleges that May, Manning, and Pinto violated the First Amendment by retaliating against Mack for reporting Defendants' misconduct to the police. Doc. 7 at 6 ¶¶ 35-41. Count II alleges that Officer McKenna violated Mack's Fourteenth Amendment procedural due process right by creating a false police report and by falsely testifying at her arbitration hearing about what she had reported on April 23. *Id*. at 7 ¶¶ 35-39. Count III alleges that the City discriminated against Mack due to her age, in violation of the ADEA. *Id*. at 8 ¶¶ 35-41. Counts IV and V allege that the City, May, and Pinto violated the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 *et seq.*, and Illinois public policy by taking retaliatory actions against her. *Id*. at 9 ¶¶ 35-42; *id*. at 10-11 ¶¶ 35-41. Defendants press several grounds for dismissal, which are addressed in turn.

### I. The AFSCME-City Settlement Agreement

Defendants contend that the AFSCME-City settlement agreement extinguishes Mack's § 1983 and Illinois law claims. (Defendants acknowledge that, due to the Older Workers Benefit Protection Act of 1990, 29 U.S.C. § 626(f)(1), the settlement did not waive the ADEA claim. Doc. 29 at 2 n.2.) The parties debate whether a union has the unilateral right to waive all legal claims an employee might have against her employer where the employee herself does not sign the waiver agreement. There is no need to resolve that question here because the settlement agreement, by its plain terms, does not even purport to extinguish Mack's individual claims.

Defendants contend that Paragraph 1 of the agreement waives Mack's individual claims against the City and the other defendants. Doc. 21 at 7; Doc. 29 at 2. Paragraph 1 states:

> *AFSCME* hereby withdraws the Request to Arbitrate with prejudice, and waives any and all individual or class claims, including but not limited to any grievances, any suits at law or equity, or claims before any administrative agency, which *it* now has or may have against the City and its officers, employees, and assigns arising either directly or indirectly out of the City's issuance of any discipline to Mack, including the Discharge, including any and all claims for back pay or other monetary relief, except only as may be necessary to enforce the specific provisions of this agreement.

Doc. 21-1 at ¶ 1 (emphases added). As the emphasized text makes clear, the agreement waives *AFSCME*'s claims against the City and its employees, not Mack's claims. And Mack's claims here, which arise under the First Amendment, Fourteenth Amendment, and Illinois law, belong not to AFSCME, but to Mack. AFSCME and the City *could* have drafted contractual language that at least purported to extinguish those claims—for example, "AFSCME waives, on behalf of its member Marva Mack, any claims she may have relating to her discharge"—which would have presented the question whether AFSCME had the authority to effect such a waiver without Mack's consent. But Defendants do not cite any provision of the settlement agreement that does that, so they have not even taken the first step to establishing on the pleadings that the settlement agreement extinguishes Mack's claims.

## II. The Sufficiency of Mack's Factual Allegations

### A. First Amendment Claim

Mack's First Amendment retaliation claim alleges that she reported Defendants' misconduct to the police, that this was protected speech, and that she was fired due to her speech. Doc. 7 at 6 ¶¶ 35-40. Pinto, May, and Manning seek dismissal on the ground that they were not personally involved in Mack's termination. Doc. 21 at 9-10. Specifically, they argue that the complaint alleges that Commissioner Evans terminated Mack for providing false or inaccurate information to the police, but "does not allege any facts that link Pinto, May, or Manning to the decision to terminate [Mack] based on the [police] report." *Id*. at 10.

6

The "cat's paw" theory holds that "if a supervisor performs an act motivated by [impermissible] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (footnote omitted). Traditionally, the theory is used to evaluate whether the *employer* is liable, not whether an individual employee who harbored the impermissible animus is liable. However, in *Smith v. Bray*, 681 F.3d 888 (7th Cir. 2012), the Seventh Circuit held that cat's paw theory also can be used to establish individual liability under 42 U.S.C. § 1981, while noting that claims under § 1981, § 1983, and Title VII generally follow the same framework and observing that five other circuits have found individual liability on the cat's paw theory for § 1983 claims. *Id*. at 898-99 ("[A]t least five circuits have indicated that a cat's paw theory would support imposing *individual* liability under § 1983 on subordinate governmental employees with unlawful motives who cause the real decision-makers to retaliate. … In general, the same standards govern intentional discrimination claims under Title VII, § 1981, and § 1983."). So the cat's paw theory is apt here.

Mack argues that May, Manning, and Pinto had a retaliatory motive arising from Mack's resistance to editing Marks's time sheets, and that Evans was "the unwitting manager or supervisor who is persuaded to act based on another's illegal [motive]." *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011); *see also Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012) ("In employment discrimination law the 'cat's paw' metaphor refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action."). To satisfy the causation requirement, Mack need only allege "some direct relation

between the injury asserted and the injurious conduct alleged." *Staub*, 562 U.S. at 419. In determining whether a plaintiff has sufficiently alleged causation, "[t]he key question is whether the non-decision-maker's actions were a 'causal factor,' based on common-law proximate cause principles, in the termination decision." *Smith*, 681 F.3d at 900.

The complaint alleges that May asked Mack to make improper edits to Marks's time sheet, that he attempted to go over Mack's head when she refused, and that he made false statements to the police that were attributed to Mack. Doc. 7 at ¶¶ 14, 19, 30. These allegations are sufficient to state a claim against May, for they permit a reasonable inference that he bore animus against Mack and intended to harm her, and that he intended to harm her due to her speech regarding official misconduct. The causation requirement is met, as Evans fired Mack due to her believe that Mack had made false statements to the police, and May is alleged to have provided a statement to the police and "contributed to the fabricated police report." *Id*. at ¶ 30.

Pinto's involvement is alleged to be the following: He wrongfully accused Mack of failing to submit certain time sheets, edited Marks's time sheet at May's request, criticized Mack for not turning over time sheets at his request, made copies of the time sheets, and sent Mack a "Disciplinary Action Report" for "entries made into [Marks's] CATA record which appear to have no supporting documentation, as well as for removing documents from city property, lying to May about possession of the documents, and purposely withholding documents from a Department Official." *Id*. at ¶¶ 9, 20, 21, 23. All of this raises the inference that Pinto bore animus toward Mack and intended to undermine her at work. However, none of it meets the causation required to proceed on a cat's paw theory.

The complaint alleges that Mack's termination was due to Evans's belief that Mack had lied to the police on April 23. None of Pinto's actions bear any causal relationship to the

8

termination. To be sure, Pinto was generally involved in the disputes over Marks's time sheets, but the complaint does not allege that Pinto ever spoke to the police or otherwise contributed to the false police report, nor does it allege that any of his activities caused police involvement in the first instance. Accordingly, Mack cannot proceed against Pinto on a cat's paw theory. *See, e.g., Nichols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 604 (7th Cir. 2014) (affirming summary judgment for defendants and rejecting cat's paw liability where the biased employee's improper conduct did not cause termination); *Johnson v. Koppers, Inc.*, 726 F.3d 910, 915 (7th Cir. 2013) (same).

The same is true of Manning, whose alleged involvement is even less substantial than Pinto's. Manning is alleged to have done the following: when asked by Mack why she was being disciplined, Manning responded by asking Mack to turn over the time sheets, and then asked for them again after Mack returned from her first suspension. *Id*. at ¶¶ 24, 26. Neither action has any causal nexus to Evans's termination of Mack due to Mack's allegedly lying to the police, let alone a sufficient nexus to constitute proximate cause.

In sum, Mack's § 1983 First Amendment claim can proceed against May but not against Pinto or Manning. Mack will be given one opportunity to amend her claim to allege a sufficient connection between Pinto's and May's actions and her termination.

**B.     Due Process Claim**

As noted, Count II alleges that Officer McKenna violated Mack's procedural due process rights by "creating a false police report and falsely testifying at [Mack's] hearing." Doc. 7 at 7 ¶¶ 35-39. Defendants move to dismiss on the grounds that McKenna was not responsible for the procedural protections afforded (or not afforded) Mack and that, in any event, the procedural protections she did receive were adequate. Doc. 21 at 10-12.

9

"A procedural due process claim requires a two-fold analysis. First, [the court] must determine whether the plaintiff was deprived of a protected interest; second, [the court] must determine what process is due." *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 804 (7th Cir. 2010). Thus, the right a plaintiff seeks to protect is not a right to the protected interest itself, but rather a right to sufficient procedural protections prior to the deprivation of the interest. *See Owen v. Lash*, 682 F.2d 648, 652 (7th Cir. 1982) ("[D]espite the fact that the right to procedural due process may have an incidental effect on the substance of the actions undertaken by the government, it is clear that the guarantee of procedural due process merely imposes upon the State a duty to follow a fair process of decision making. Thus, a determination that governmental action violated a citizen's right to procedural due process is merely a condemnation of the procedures that attended the action and not an assessment of the constitutionality or propriety of the action itself.").

When addressing the procedural right in question, the complaint identifies Mack's "right to a fair and impartial investigation of her false police report" and right to a "fair and objective hearing" in the context of her termination. Doc. 7 at 7 ¶¶ 36-37. McKenna is not alleged to have been responsible for providing or safeguarding those rights. A "plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008); *see also Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010); *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009). McKenna was not responsible for establishing procedures to protect, or for preventing inappropriate deprivations of, Mack's interest in keeping her job. Nor, for that matter, was McKenna's position (police officer) one that is ordinarily responsible for procedural requirements concerning the termination of a city employee's job.

Count II is dismissed without prejudice, and Mack will be given one opportunity to replead the procedural due process claim.

C. **ADEA Claim**

Count III alleges that the City terminated Mack due to her age, in violation of the ADEA. Specifically, Mack alleges that she was born in 1951 and that she was treated less favorably than similarly-situated employees due to her age. Doc. 7 at 8 ¶¶ 35-36. (Mack originally alleged a hostile work environment as well, *id*. at 8 ¶ 37, but has abandoned that claim, Doc. 26 at 11 n.4.) Defendants seek dismissal on the ground that the complaint fails allege facts showing that age was the basis for her dismissal. Doc. 21 at 12-13.

The ADEA claim alleges that Mack is over 40 and thus protected by the ADEA, *see* 28 U.S.C. § 631, and that she was treated less favorably than similarly-situated workers of a different age, Doc. 7 at 8 ¶¶ 35-36. In the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Seventh Circuit has held that materially identical allegations suffice to state an employment discrimination claim. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) ("Even after *Bell Atlantic* … , in order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex."); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007) (holding that a plaintiff's allegation that "I was turned down for a job because of my race" is sufficient to survive a Rule 12(b)(6) motion to dismiss). Given those precedents, Mack's ADEA claim survives dismissal.

D. **State Law Claims**

Count IV alleges that Mack was terminated in violation of the IWA, while Count V advances a common law retaliatory discharge claim on the theory that her termination violated a

"clearly mandated public policy for reporting possible illegal conduct and refusing to take part in such conduct." Doc. 7 at ¶ 1; *id*. at 9 ¶¶ 35-40; *id*. at 10 ¶¶ 35-39. Both claims are brought against the City, May, and Pinto. Defendants move to dismiss as to the individual defendants, but not the City. Mack concedes that the individual defendants are not proper parties as to the common law retaliatory discharge claim, Doc. 26 at 12 n.5, so the only remaining question is whether they are proper defendants for the IWA claim.

An IWA claim may be brought only against an "employer." 740 ILCS 174/1 *et seq*. The IWA defines "employer" as: "an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, … and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees." 740 ILCS 174/5. Two decisions from this District hold that this definition does not encompass government employees. *See Hernandez v. Sheriff of Cook Cnty.*, 2014 WL 1339686, *3 (N.D. Ill. Apr. 3, 2014); *Parker v. Ill. Human Rights Comm'n*, 2013 WL 5799125, *9-10 (N.D. Ill. Oct. 25, 2013). More recent decisions disagree, holding that the definition's final clause "makes it clear that individuals acting on behalf of an entity that one might colloquially understand to be a person's 'employer' may likewise be considered 'employers' potentially liable for violating the statute." *Bello v. Vill. of Skokie*, 2014 WL 4344391, *9 (N.D. Ill. Sep. 2, 2014); *see also Hower v. Cook Cnty. Sheriff's Office*, 2016 WL 612862, *3 (N.D. Ill. Feb. 16, 2016). This court agrees with *Bello* and *Hower*; the statutory text makes clear that when an individual interacts with an employee on behalf of the employer—and May and Pinto surely meet this requirement, as Mack's supervisors—that person may himself be considered an employer within the meaning of the statute.

Defendants next argue that the complaint does not allege that Pinto and May retaliated against Mack. This is incorrect. The IWA states that "[a]ny … act or omission not otherwise specifically set forth in this Act … constitutes retaliation … if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1. As one court has observed, although "[f]ew courts have interpreted the IWA, … it is sufficiently clear from the language of the statute that a plaintiff may only prove an IWA claim by showing that he engaged in protected whistleblowing activity [and] suffered adverse employment action … as a result." *Bello v. Village of Skokie*, 151 F. Supp. 3d 849, 865 (N.D. Ill. 2015). Whether an action is "materially adverse" will depend on the context. *See Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) ("[T]he significance of any given act of retaliation will depend on the particular circumstances. Context matters.").

While there is no dispute that Evans actually terminated Mack, May and Pinto are nonetheless alleged to have taken retaliatory action—May gave false information to the police that led to Mack's termination, and Pinto disciplined Mack by creating a "Disciplinary Action Report" for issues already resolved during a pre-disciplinary hearing—in response to Mack's refusal to edit Marks's time sheets. Mack's refusal was at least plausibly covered by 740 ILCS 174/20, which protects employees who refuse to "participate in an activity that would result in a violation of a State or federal law, rule, or regulation … ." And while the complaint identifies only her termination as the retaliatory action, Mack's response brief specifically describes the "instigat[ion of] a pre-disciplinary hearing, suspension, and disciplinary report" as retaliatory. The Seventh Circuit has made clear that a plaintiff may supplement her factual allegations in a brief responding to a motion to dismiss. *See Phillips*, 714 F.3d at 1020. Thus, considering both

the complaint and response, Mack has alleged that she engaged in protected activity (refusal to illegally alter time sheets) and suffered retaliation (the disciplinary write-ups and false report) as a result. Mack has therefore stated a viable IWA claim against May and Pinto.

## Conclusion

Defendants' motion to dismiss is granted in part and denied in part. Count I is dismissed without prejudice as to Pinto and Manning, but may proceed against May. Count II is dismissed without prejudice as well. Counts III and IV may proceed. Count V is dismissed with prejudice as to May and Pinto, but may proceed against the City.

If Mack wishes to replead Count II and the dismissed portion of Count I, she must file an amended complaint by March 24, 2017. If Mack does not replead, Defendants shall answer the surviving portions of the operative complaint by March 31, 2017. If Mack does replead, Defendants shall answer the portions of the amended complaint that survived dismissal, and answer or otherwise plead to the amended portions of the amended complaint, by April 7, 2017.

March 10, 2017

United States District Judge