UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARVA MACK, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 7807 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| THE CITY OF CHICAGO, ROBERT MAY, and | ) | |
| CESAR PINTO, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Marva Mack sues her former employer, the City of Chicago, along with her former

supervisors, Robert May and Cesar Pinto, alleging claims under 42 U.S.C. § 1983, the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and Illinois law. Doc. 7.

Earlier in the case, the court dismissed certain of Mack's claims and allowed others to proceed.

Docs. 36-37 (reported at 2017 WL 951369 (N.D. Ill. Mar. 10, 2017)). Defendants now move for

summary judgment on Mack's remaining claims, Doc. 64, and to strike certain materials that she

submitted with her opposition papers, Doc. 84. Defendants' motion to strike is granted in part,

denied in part, and denied as moot in part, and their summary judgment motion is granted.

**Background**

**A.      Defendants' Motion to Strike Certain of Mack's Exhibits**

Civil Rule 37(c)(1) states: "If a party fails to provide information or identify a witness as

required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless." Fed. R. Civ. P. 37(c)(1). Defendants move under Rule 37(c)(1) to bar

the following witness statements that Mack submitted in opposition to summary judgment: an

April 18, 2018 letter from Denise Arnold, Mack's union representative and an employee at the Chicago Department of Aviation ("CDA"), where Mack worked, Doc. 79 at 9; Doc. 90 at 9; an April 30, 2018 sworn statement from Madeline Orok, a CDA parking enforcement agent, Doc. 79 at 33; Doc. 90 at 16; a July 3, 2018 letter from William H. Cruse, Sr., a CDA custodial supervisor, Doc. 79 at 62; Doc. 90 at 2; a May 2, 2018 email from Robert M. Kelly, Jr., a former CDA custodial foreman, Doc. 79 at 64; Doc. 90 at 11; a May 2, 2018 letter from James Rufus, who interacted with Mack at the CDA, Doc. 79 at 66; Doc. 90 at 4; a May 2, 2018 letter from Priscilla Crowder, a CDA administrative services officer, Doc. 79 at 68-69; Doc. 90 at 6; and a May 2, 2018 letter from Marilyn Bracy, a retired City employee, Doc. 79 at 81; Doc. 90 at 13. Doc. 85 at 2-4.

Defendants assert without contradiction that Mack first produced those statements along with her summary judgment opposition papers. Doc. 85 at 1-2; Doc. 90 at 1, 18. It follows, Defendants maintain, that Mack violated her obligation under Rule 26(e)(1)(A) to supplement her written discovery responses by failing to produce those statements during the discovery period or, in all events, before the summary judgment deadline. *See* Fed. R. Civ. P. 26(e)(1)(A) ("[A] party … who has responded to an interrogatory[ or] request for production … must supplement or correct its … response … in a timely manner if the party learns that in some material respect the … response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing … ."); *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007) (holding that the plaintiff "was required by Rule 26(e) to supplement his Rule 26(a) disclosures" even "after the close of discovery").

During discovery, Defendants served an interrogatory on Mack asking her to "[s]tate whether [she] … has taken, given or obtained any statements, signed or unsigned, oral or written, related to the allegations in [her] Amended Complaint or [her] employment with the City," and to provide details about and copies of those statements. Doc. 85-1 at p. 8, ¶ 4. Similarly, Defendants served Mack with a request to produce "all documents that refer to, relate to, or concern communication between [her] and any employee or former employee of the City which relate in any way to the subject matter of [her] Amended Complaint or to [her] employment with the City." *Id*. at p. 14, ¶ 4; *see also id*. at p. 15, ¶ 19 (requesting documents specifically about age discrimination). The witness statements that Defendants seek to bar are plainly responsive to those written discovery requests.

Mack does not contend that she complied with Rule 26(e)(1)(A), but instead argues her production of the statements was timely under Rule 26(a)(2)(D). Doc. 90 at 18. But Rule 26(a)(2)(D) governs expert disclosures, not statements from lay witnesses, and therefore is inapposite. Mack offers no other argument justifying her tardy disclosure, thereby forfeiting any such argument. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … ."). The only remaining question concerns whether relief under Rule 37(c)(1) is appropriate.

"Under Rule 37(c)(1), exclusion of non-disclosed evidence is automatic and mandatory unless non-disclosure was justified or harmless." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (alteration and internal quotation marks omitted); *see also Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011) ("Whether a failure to comply with Rule 26(a)

or (e) is substantially justified, harmless, or warrants [Rule 37(c)(1)] sanctions is left to the broad

discretion of the district court.").  "The rationale behind Rule 37 'is to avoid an unfair ambush in

which a party advances new theories or evidence to which [her] opponent has insufficient time to

formulate a response.'"  *Only the First, Ltd. v. Seiko Epson Corp.*, 822 F. Supp. 2d 767, 778

(N.D. Ill. 2011) (quoting *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 934 (N.D. Ill.

2008)).  Mack bears the burden to "show that [her] violation of Rule 26[] was either justified or

harmless."  *Keach v. U.S. Trust. Co.*, 419 F.3d 626, 639 (7th Cir. 2005) (internal quotation marks

omitted).  In deciding whether to impose a remedy under Rule 37(c)(1), the "court should

consider …: (1) the prejudice or surprise to the party against whom the evidence is offered; (2)

the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial[ or

motion]; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier

date."  *Tribble*, 670 F.3d at 760 (internal quotation marks omitted).

Defendants have shown prejudicial surprise.  Despite their on-point written discovery

requests, Mack produced none of the witness statements—which primarily assert that Robert

May, her supervisor and one of the two individual defendants, made disparaging remarks about

her age and singled her out due to her age—until weeks after Defendants moved for summary

judgment.  Doc. 79 at 9, 33, 62, 64, 66, 68-69, 81.  Yet Mack obtained all but Cruse's statement

before discovery closed on June 13, 2018, Doc. 63, and Cruse prepared his statement more than

two weeks before Defendants moved for summary judgment, Doc. 79 at 62.  Moreover, Mack

did not identify Orok, Rufus, or Bracy in her Rule 26(a)(1) disclosures.  Doc. 85-1 at 25-27; *see*

*King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017) ("[T]here is obvious prejudice in

failing to disclose … a witness during discovery … .").  And although Mack identified Arnold,

Cruse, Kelly, and Crowder in her Rule 26(a)(1) disclosures, she did not indicate that they had

knowledge that May discriminated against her due to her age. *Compare* Doc. 85-1 at 26-27 (not indicating that Arnold, Cruse, Kelly, or Crowder knew about discrimination against Mack), *with id*. at 27 (Mack disclosing that a different witness, Grafe Smith, *did* know "of the facts underlying Plaintiff's Complaint regarding treatment based on her age"). Thus, although Mack asserts, without explanation or reference to any discovery responses, that Defendants "w[ere] aware of" the above-referenced witnesses, Doc. 90 at 18, she fails to rebut Defendants' submission that they were surprised by the witness statements first revealed as part of her summary judgment opposition.

The other Rule 37(c)(1) factors also weigh in Defendants' favor. That a trial date has not been set is immaterial, for Rule 37(c)(1) prohibits improperly withheld evidence from disrupting a "motion" as well as a "trial." Fed. R. Civ. P. 37(c)(1); *see Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641-43 (7th Cir. 2008) (holding at summary judgment that an expert report's violation of Rule 26(a)(2)(B) was not "harmless"); *Mannoia*, 476 F.3d at 456-57 (barring at summary judgment an affidavit from an expert whom the plaintiff first disclosed in his summary judgment opposition papers); *Rowe*, 586 F. Supp. 2d at 935 ("[T]he risk of 'ambush' is not lessened in this case simply because we are not yet on the eve of trial."). Here, Mack's late disclosure of the witness statements prevented Defendants from examining the witnesses, gathering additional evidence, or becoming aware of a potentially material fact dispute before they moved for summary judgment. *See Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001) (holding that a Rule 26 violation was prejudicial because the plaintiff "was entitled to assume that [the defendant's] interrogatory responses had not changed, and rely on those answers in preparing for" pretrial proceedings). And although her *pro se* status would not excuse her noncompliance with Rule 26, *see McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never

suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure."); *Casimir v. Sunrise Fin., Inc.*, 299 F. App'x 591, 593 (7th Cir. 2008) ("[E]ven when the litigant is pro se, district courts are justified in enforcing deadlines, particularly in the context of summary judgment and Local Rule 56.1.") (citing cases), the court notes that Mack was represented by counsel until after discovery closed and Defendants moved for summary judgment, Doc. 69.

Accordingly, sanctions are warranted under Rule 37(c)(1) for Mack's failure to supplement her discovery responses with the statements she obtained from Arnold, Orok, Cruse, Kelly, Rufus, Crowder, and Bracy. *See Tribble*, 670 F.3d at 760 (finding "willfulness" under Rule 37(c)(1) where the defendants "knew that they wanted to elicit exactly the testimony that they did" but failed to make the disclosure required by Rule 26). Defendants submit that the appropriate remedy is to bar the statements in their entirety. Doc. 85 at 2, 4. Mack does not request a less severe sanction, thereby forfeiting any argument that a complete bar is not the appropriate remedy. *See King*, 872 F.3d at 838 (affirming the district court's "striking the declaration" under Rule 37(c)(1) where the plaintiff "did not propose any alternatives to" that remedy); *see also G & S Holdings*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721. As a result, the above-referenced statements, emails, and letters are barred under Rule 37(c)(1) for purposes of summary judgment.

Defendants also seek to bar a July 26, 2016 letter prepared by Crowder. Doc. 85 at 4-6 (challenging Doc. 79 at 4-5). But Mack avers that she produced the letter in discovery, Doc. 90 at 18; *see also* Doc. 92 at 2 (Defendants not disputing that averment), so Rule 37(c)(1) sanctions are inappropriate even if Mack did not sufficiently identify Crowder in her Rule 26(a)(1)

disclosures. *See Saathoff v. Davis*, 826 F.3d 925, 932 (7th Cir. 2016) (holding that Rule 37(c)(1) sanctions were unwarranted where a Rule 26 violation was "harmless" given the other evidence available to the movant).

### B. Mack's Noncompliance with Local Rule 56.1(b)(3)

Consistent with Local Rule 56.1, Defendants filed a Local Rule 56.1(a)(3) statement of undisputed facts along with their summary judgment motion. Doc. 66. The factual assertions in the Local Rule 56.1(a)(3) statement cite evidentiary material in the record and are supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Also consistent with the local rules, Defendants served Mack with a Local Rule 56.2 notice, which explains what Local Rule 56.1 requires of a *pro se* litigant opposing summary judgment. Doc. 68.

In addition to her brief and evidentiary materials, Docs. 79-80, Mack filed a Local Rule 56.1(b)(3)(B) response to Defendants' Local Rule 56.1(a)(3) statement and a Local Rule 56.1(b)(3)(C) statement of additional facts, Doc. 77. Mack's Local Rule 56.1(b)(3)(B) response expressly declines to dispute ¶¶ 1-12, 14-18, 24-29, 31-34, 38-39, 41, 44, 51, 58-62, 64-66, 69, and 73-74 of Defendants' Local Rule 56.1(a)(3) statement, Doc. 77 at pp. 1-8, ¶¶ 1-12, 14-18, 24-29, 31-34, 38-39, 41, 44, 51, 58-62, 64-66, 69, 73-74, so the factual assertions in those paragraphs are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed to be admitted unless controverted by the statement of the opposing party."). Mack's Local Rule 56.1(b)(3)(B) response disputes the remaining paragraphs of Defendants' Local Rule 56.1(a)(3) statement, but many of those denials

violate Local Rule 56.1 in several respects, as do many paragraphs of her Local Rule 56.1(b)(3)(C) statement.

First, Mack's response violates Local Rule 56.1(b)(3)(B)'s requirement that a non-movant denying a particular paragraph in the movants' Local Rule 56.1(a)(3) statement support that denial with "specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Paragraphs 13, 23, 36, 40, 42-43, 45, 52, and 56-57 of Mack's Local Rule 56.1(b)(3)(B) response do not cite any record evidence to support her denial of the facts asserted in the corresponding paragraphs of Defendants' Local Rule 56.1(a)(3) statement. Doc. 77 at pp. 2-6, ¶¶ 13, 23, 36, 40, 42-43, 45, 52, 56-57. And although the denials in ¶¶ 67 and 71-72 of Mack's response cite evidentiary material, the denials state only that she was experiencing mental health issues around the time of her deposition. *Id.* at pp. 7-8, ¶¶ 67, 71-72. While unfortunate, Mack's possible confusion during her deposition, like her inability to verify the evidence supporting ¶¶ 36, 42, and 56-57 of Defendants' Local Rule 56.1(a)(3) statement, *id*. at pp. 4-5, ¶¶ 36, 42, 56-57, do not create genuine issues of fact. *See Abrego v. Wilkie*, 907 F.3d 1004, 1011-12 (7th Cir. 2018) ("When the moving party has carried [its] burden, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.' Instead, the nonmoving party must set forth specific facts showing a genuine issue for trial.") (citation omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Accordingly, ¶¶ 13, 23, 36, 40, 42-43, 45, 52, 56-57, 67, and 71-72 of Defendants' Local Rule 56.1(a)(3) statement are deemed admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015) ("The non-moving party's failure … to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed."); *Cracco v.*

*Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (same); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (same); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003) (same); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (same).

Second, ¶ 30 of Mack's Local Rule 56.1(b)(3)(B) response and ¶¶ 1-5, 22-23, 27, 32, and 35 of her Local Rule 56.1(b)(3)(C) statement cite only to unverified pleadings, Doc. 77 at p. 3, ¶ 30; *id*. at pp. 8-9, 11-13. ¶¶ 1-5, 22-23, 27, 32, 35, rather than evidence in the summary judgment record. Mack cannot rely on unsworn allegations in her complaint to avoid summary judgment. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 896 (7th Cir. 2018) ("It is the [non-movant's] responsibility to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."); *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (explaining that the non-movant at summary judgment "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor") (citation and internal quotation marks omitted); *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 823 (7th Cir. 2011) ("In opposing summary judgment, … [the non-movant] could not rest on the allegations in the pleadings, but was required to present evidentiary material which, if reduced to admissible evidence, may allow him to carry his burden of proof.") (internal quotation marks omitted); *Waldridge*, 24 F.3d at 920 ("[A]s [Rule] 56(e) makes clear, a party opposing summary judgment may not rely on the allegations of her pleadings."). As a result, the court disregards ¶¶ 1-5, 22-23, 27, 32, and 35 of Mack's Local Rule 56.1(b)(3)(C) statement and deems admitted ¶ 30 of Defendants' Local Rule 56.1(a)(3) statement. Moreover, ¶¶ 46, 49-50, 68, and 70 of Mack's Local Rule 56.1(b)(3)(B) response and ¶¶ 6-8, 16-21, 25, 30-31, and 36-37 of her Local Rule 56.1(b)(3)(C) statement are disregarded

insofar as they rely on the materials discussed above that are barred under Rule 37(c)(1).  Doc. 77 at pp. 4-5, 7, ¶¶ 46, 49-50, 68, 70; *id*. at pp. 9-13, ¶¶ 6-8, 16-21, 25, 30-31, 36-37.

Third, ¶ 49 of Mack's Local Rule 56.1(b)(3)(B) response and ¶¶ 14-15, 24, and 34 of her Local Rule 56.1(b)(3)(C) statement assert various legal arguments.  Doc. 77 at p. 5, ¶ 49 ("Defendants implemented discriminatory charges with the intent to isolate, silence, and ultimately force [Mack] into retirement."); *id*. at pp. 10-12, ¶¶ 14 ("[Mack] engaged in a protected activity … and May subsequently retaliated against her … ."), 15 ([Mack's] refusal to edit Marks' timesheets was at least plausibly covered under 740 ILCS 174/20 … ."), 24 ("[Mack] ultimately was fired for unsubstantiated poor performance … ."), 34 ("Defendants' 'non-discriminatory' justifications for terminating [Mack] were merely Pretext for Unlawful Discrimination.").  Because "[i]t is inappropriate to make legal arguments in a [Local] Rule 56.1[(b)(3)(C)] statement" or a Local Rule 56.1(b)(3)(B) response, *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008), the court will disregard those legal arguments.  *See Curtis*, 807 F.3d at 219 ("[D]istrict courts are not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'") (quoting *Bordelon v. Ch. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)); *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 739 F. Supp. 2d 1063, 1068 (N.D. Ill. 2010) (St. Eve, J.) ("[T]he purpose of [Local Rule 56.1(a)(3)] statements [as well as Local Rule 56.1(b)(3)(B) responses and Local Rule 56.1(b)(3)(C) statements] is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, and thus the Court will not address the parties' arguments made in their [Local Rule 56.1(a)(3) or 56.1(b)(3)(C)] statements and [Local Rule 56.1(b)(3)(B)] responses.") (citation omitted).

The court will not excuse Mack's violations of Local Rule 56.1. The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (citing cases); *see also Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016) (same, citing cases); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) (same). Mack's *pro se* status does not excuse her from complying with Local Rule 56.1. *See McNeil*, 508 U.S. at 113; *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) ("While we liberally construe the pleadings of individuals who proceed pro se, neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.") (internal quotation marks omitted); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules … ."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant … .") (citation omitted).

As a result, except where Mack has complied with Local Rule 56.1(b)(3)(B) in disputing facts asserted in Defendants' Local Rule 56.1(a)(3) statement, Doc. 77 at pp. 2-6, ¶¶ 19-22, 35, 37, 47-48, 53-55, 63, Defendants' assertions are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("[A]ll material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed to be admitted unless controverted by the statement of the opposing party."); *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, __ F.3d __, 2019 WL 1198376, at *2 (7th Cir. Mar. 14, 2019)

("The [district] court addressed at the outset VitalGo's noncompliance with Local Rule 56.1. According to well-established Seventh Circuit law, that noncompliance meant that the district court could exercise its discretion to accept Kreg's statements of fact as undisputed."); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Curtis*, 807 F.3d at 218 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012) (similar); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (similar); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) (similar). Similarly, except where Mack has complied with Local Rule 56.1(b)(3)(C) in setting forth additional facts, Doc. 77 at pp. 9-14, ¶¶ 9-13, 24, 26, 28-30, 33, 36, 38-40, her Local Rule 56.1(b)(3)(C) statement is disregarded. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015) ("[The plaintiff's] efforts cannot be considered compliant, let alone strictly compliant, with the requirements of [Local] Rule 56.1. Accordingly, the district court did not abuse its discretion in disregarding the facts contained in [the Local Rule 56.1(b)(3)(C)] statement of additional facts that were not supported by proper citations to the record.") (citation omitted); *Bryant v. Bd. of Educ., Dist. 228*, 347 F. App'x 250, 253 (7th Cir. 2009) (similar); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005) (similar).

That said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not … automatically result in

judgment for the movant[s]. [The movants] must still demonstrate that [they are] entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (citations and internal quotation marks omitted). Accordingly, the court will recite the facts as favorably to Mack as the record and Local Rule 56.1 permit, and then will determine whether Defendants are entitled to judgment on those facts. *See Johnson*, 892 F.3d at 893. At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 636 (7th Cir. 2018).

### C.    Material Facts

Mack was a Clerk IV-Timekeeper at CDA until her termination on August 11, 2015. Doc. 66 at ¶¶ 4, 62. In that role, Mack recorded time for CDA's administrative and custodial employees using a computer program known as Chicago Automated Time and Attendance ("CATA"). *Id*. at ¶¶ 5, 7. Mack was supervised by Cesar Pinto, an Administrative Services Officer II (and one of the two remaining individual defendants), who reported to Annabel Garcia, the Supervisor of Personnel Administration, who in turn reported to Robert May, Director of Administration (and the other remaining individual defendant), who in turn was supervised by Angela Manning, CDA's Managing Deputy Commissioner. *Id*. at ¶ 3.

Mack's responsibilities included processing and filing "edit sheets," which were directions an employee who missed work would submit, with her supervisor's signature, to indicate how the missed time should be coded in the CATA system. *Id*. at ¶¶ 6-8. Consistent with CDA's Standard Operating Procedure and the City's public records obligations, after Mack processed an edit sheet, she would file the paper copy so that Manning, May, and Pinto could review it. *Id*. at ¶¶ 8-10. Mack's failure to provide edit sheets for review was considered insubordination. *Id*. at ¶ 11.

After receiving counseling in December 2014 to address her inaccurate time entries, Mack made edits to LaToya Marks's timesheet after Marks missed work on January 11, 2015. *Id*. at ¶¶ 12, 17. First, on January 15, Mack recorded Marks's time as "sick/no pay," but then on January 20 changed the code to "paid vacation/sick," thus using one of Marks's annual paid vacation/sick days. *Id*. at ¶¶ 15, 17-18. Marks, however, had not meant to request paid time off, so she asked May to investigate. *Id*. at ¶¶ 17-18. When May asked Mack about the two conflicting entries for January 11, Mack responded that she had received two edit sheets, one from each of Marks's supervisors, and had input them both. *Id*. at ¶¶ 14, 19.

May asked to see the edit sheets, but Mack did not produce them. *Id*. at ¶¶ 19-20. Mack also refused to produce the edit sheets to Pinto—whom May asked to follow up with Mack—claiming that she had resolved the issue with May. *Id*. at ¶¶ 20-21; Doc. 66-1 at 194. When May told Pinto that he still needed the edit sheets, Pinto again asked Mack for them. Doc. 66 at ¶¶ 21-22; Doc. 66-1 at 194. Mack then showed the two edit sheets to May, who decided to invite Marks into his office to decide which one Mack should input. Doc. 66 at ¶ 22. (Mack denies this account, contending that she provided May with the edit sheets on January 11, the day that Marks missed work and several days before she entered Marks's time. Doc. 77 at p. 2, ¶¶ 20-22 ("[Mack] already had provided May the edit sheets on January 11 … ."). The cited portion of May's deposition transcript does not support Mack's denial because it does not specify when May saw the edit sheets. Doc. 66-1 at 165-166 (May testifying only that he saw the edit sheets sometime before Marks visited his office on February 25). Accordingly, the above-referenced facts are deemed admitted.)

Marks came to May's office to review her edit sheets on February 25, but Mack refused to produce them, claiming that she gave the originals to her union and took the other copies

home.  Doc. 66 at ¶ 23; Doc. 66-1 at 82.  Mack gave Pinto the same story, so he restored Marks's January 11 time entry to "sick/no pay."  Doc. 66 at ¶¶ 24-25.  On March 6, Mack received a notice to attend a "Pre-Disciplinary Meeting" about her handling of Marks's edit sheets.  *Id*. at ¶ 26; Doc. 66-1 at 201.  Mack received two other Pre-Disciplinary Meeting Notices on February 19, which on April 6 resulted in a written warning regarding her failure to timely process other edit sheets.  Doc. 66 at ¶ 13; Doc. 66-1 at 178-179, 181.

During the Pre-Disciplinary Meeting on March 25, Mack's union representatives denied having received Marks's original edit sheets.  Doc. 66 at ¶¶ 26, 28.  Mack then admitted that she had lied about where the edit sheets were because she was afraid that someone might destroy them and accuse her of falsifying time records.  *Id*. at ¶¶ 28-29.  Mack handed Pinto a folder with the edit sheets, but he returned the folder to her before the meeting concluded.  *Id*. at ¶ 30; Doc. 66-1 at 69.  Both the union representatives and Pinto advised Mack that the time records were City property and that she needed to produce them upon request.  Doc. 66 at ¶¶ 27, 31.

On April 6, Mack received a five-day disciplinary suspension, effective April 13, for failing to produce the edit sheets, lying about their location, and purposefully withholding them from May.  *Id*. at ¶ 32; Doc. 66-1 at 206-207.  When meeting with Manning on April 8 about her suspension, Mack again admitted that she had lied about providing the edit sheets to her union and taking copies home, but she claimed that no one had asked her for them.  Doc. 66 at ¶¶ 33-34.  Manning advised Mack that the edit sheets were City property and did not belong to any employee, but she agreed to delay the suspension until she could determine what Mack had been asked to produce.  *Id*. at ¶ 35.  (Mack submits that Manning instead told her, "If you don't produce those edit sheets before you leave out of my office, I am going to suspend you!"  Doc. 77 at pp. 3-4, ¶¶ 35, 37.  The only evidence Mack cites is the notice of suspension, *ibid*. (citing

Doc. 79 at 7), which does not reflect what Manning said on April 8 and therefore does not support Mack's submission.)

After meeting with Garcia and reviewing emails from May and Pinto asking Mack to provide the edit sheets, Manning again asked Mack about them. Doc. 66 at ¶¶ 36-37. Mack admitted to lying to Manning but claimed that she was unable to produce the edit sheets because she had forgotten her desk keys at home. *Id*. at ¶ 38. Manning told Mack that she needed to produce the edit sheets when she returned from her suspension, which was to begin as scheduled on April 13. *Id*. at ¶¶ 39-40. Yet upon returning on April 22, Mack declined to provide the edit sheets to May and Manning. *Id*. at ¶¶ 41, 43-45. Manning then asked Mack into her office and warned that she might be violating rules about the retention of City records, but Mack refused to go into Manning's office or produce the edit sheets. *Id*. at ¶¶ 46-48. Given Mack's repeated refusals to provide the edit sheets, and in consultation with the City's legal department, Manning reassigned Mack to administrative duties and moved her to a new desk without access to the CATA system. *Id*. at ¶ 49.

In late April 2015, Mack called the police to report that someone had broken into her original desk and that some edit sheets were missing. *Id*. at ¶ 51. Although Mack told the police that the City's Office of Inspector General ("OIG") directed her to secure the edit sheets and that her coworker, Priscilla Crowder, told her that Marks and May did "something" at her desk, both Crowder and the OIG denied that they had told Mack those things. *Id*. at ¶¶ 53, 55; Doc. 66-1 at 214-215, 217-218. (Mack denies this account, asserting that the officers did not write the reports cited by Defendants' Local Rule 56.1(a)(3) statement, Doc. 66-1 at 214-215, 216-217. Doc. 77 at pp. 5-6, ¶¶ 53-55. However, the evidence she cites to support her denial does not refer to the

16

officers' reports, Doc. 79 at 37 (referring instead to the record of Mack's 911 call), so the foregoing facts are deemed admitted.)

Some two months later, on July 7, a folder containing one of the edit sheets for Marks's January 11 time was recovered from Mack's original desk; the second edit sheet was never found. Doc. 66 at ¶¶ 56-57. On August 3, Mack received a notice (prepared by May) that CDA was considering discharging her for several reasons, including: (1) falsely telling Manning on April 8 that May and Pinto had not requested Marks's edit sheets; (2) failing to provide the edit sheets to May and Manning between April 8 and April 22; (3) making false statements to the police in late April, including about what Crowder and the OIG had said to her; and (4) failing to surrender either of Marks's edit sheets until July 7. *Id.* at ¶¶ 58, 63; Doc. 66-1 at 224-227. After providing Mack an opportunity to respond, CDA Commissioner Ginger Evans terminated her on August 11. Doc. 66 at ¶¶ 60-62; Doc. 66-1 at 237-238. (Mack asserts that May and Pinto, not Evans, effected her termination. Doc. 77 at p. 6, ¶ 63. Mack's assertion fails because she relies on administrative forms that Pinto and May prepared in September 2015 to record, rather than precipitate, her August 11 termination. Doc. 79 at 42-44.)

Although Mack could not recall specific instances in which May or Pinto engaged in age discrimination, Doc. 66 at ¶ 72, she noted that Paulette White, a CDA Assistant Commissioner, frequently told her that she should retire. Doc. 77 at p. 12, ¶ 28; Doc. 66-1 at 144-145. Additionally, Mack repeatedly told OIG that she was afraid of losing her job due to her disciplinary history, that someone might destroy Marks's edit sheets, and that she "was being harassed." Doc. 66 at ¶ 66 (quoting Doc. 66-1 at 136). Crowder recalls that Garcia and other coworkers would harass Mack and that when Crowder told May about the harassment, May did nothing. Doc. 77 at p. 12, ¶ 29; Doc. 79 at 4-5. Mack contends that Marks acted contrary to

CDA protocol by going directly to May about her time and that May and Pinto violated CDA protocol in adjusting her time, but never explains what those protocols were. Doc. 66 at ¶ 68. Mack also asserts that she was treated less favorably than younger employees Manning, May, White, Marks, and Vanessa Robinson, a Clerk VI-Timekeeper who received one- and two-day suspensions for unintentional errors that led to overpayments. *Id*. at ¶¶ 73-74.

Marks, the only member of that group under 40, was not disciplined during this period and was later promoted from a custodial worker to a window washer. *Id*. at ¶ 73; Doc. 77 at p. 11, ¶ 24 (citing Doc. 66-1 at 108). Mack asserts that Marks received this promotion despite having impersonated a police officer, but her only evidence comes from her husband's deposition, Doc. 77 at p. 11, ¶ 24 (citing Doc. 79 at 49), where he admitted that his knowledge of Marks's actions came entirely from what Mack had told him, Doc. 79 at 50-51. Mack's husband's testimony impermissibly reports Mack's out-of-court statements for the truth of what they assert, so Defendants' hearsay objection to that testimony is sustained. Doc. 87 at 10-11; *see Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment. … [The deponent] claimed to know that voting records were accessed and used because [another person] told her so. [That] statement, as repeated by [the deponent], was not made at a trial or hearing, and the plaintiffs seek to use it to prove that voting records were accessed … . Thus, [the deponent's] version of [the declarant's] statements is not admissible and will not overcome a motion for summary judgment.").

## Discussion

Mack's surviving claims allege under § 1983 that May and the City unlawfully retaliated against her for exercising her First Amendment right to report workplace misconduct; that all

Defendants violated the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 *et seq*.; that the

City discharged her in violation of Illinois public policy against retaliation; and that all

Defendants discriminated against her and created a hostile work environment in violation of the

ADEA.  Doc. 7 at pp. 6, 8-11.

## I.     First Amendment and State Law Claims

To prove that her discharge violated the First Amendment, Mack must show: "(1) [s]he

engaged in activity protected by the First Amendment; (2) [s]he suffered a deprivation that

would likely deter First Amendment activity in the future; and (3) [her] First Amendment

activity was at least a motivating factor in the defendants' decision to take the retaliatory action."

*McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017) (internal quotation marks

omitted).  Defendants assert that the speech underlying Mack's First Amendment claim—her

reports that her desk was broken into and that some edit sheets were missing or might have been

destroyed, Doc. 66 at ¶¶ 51, 66—is not protected under the First Amendment and that, in any

event, her having engaged in that speech did not cause her discharge.  Doc. 65 at 7-11; *see Roake*

*v. Forest Preserve Dist. of Cook Cnty.*, 849 F.3d 342, 346 (7th Cir. 2017) ("[P]ublic employees

have no cause of action under the First Amendment when they are disciplined for speaking

pursuant to their official duties, even if the speech is on a matter of public concern.").  Mack

neither responds to these arguments nor even mentions her First Amendment claim, thereby

abandoning the claim.  *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 641 (7th Cir. 2019)

("The [defendant's] motion sought summary judgment on all claims. … The district court was

not required to address a claim or theory that plaintiff did not assert [in opposition to summary

judgment].."); *Keck Garrett & Assocs. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir.

2008) ("[The defendant] specifically requested summary judgment on the quantum meruit claim.

[The plaintiff], however, did not defend that claim in its reply to [the defendant]'s motion for summary judgment. By failing to present its argument to the district court, [the plaintiff] abandoned its claim."); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [a ground for relief] in his brief opposing summary judgment, [the plaintiff] lost the opportunity to urge it in both the district court and this court."), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).

To prevail on her state law retaliatory discharge claim, Mack must show: "(1) [her] employer discharged [her], (2) in retaliation for [her] activities, and (3) that the discharge violates a clear mandate of public policy." *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019) (quoting *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009)). Defendants argue that Mack has not shown that her discharge violated Illinois public policy or that the reasons offered for the discharge were pretextual. Doc. 65 at 11-14. As with her First Amendment claim, Mack neither responds to Defendants' arguments nor even mentions her retaliatory discharge claim, thereby abandoning that claim as well. *See Gates*, 916 F.3d at 641; *Keck Garrett*, 517 F.3d at 487; *Witte*, 434 F.3d at 1038.

The IWA "forbids an employer to 'retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation.'" *Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 670 (7th Cir. 2008) (quoting 740 ILCS 174/20). To prevail on a claim under that provision, "a plaintiff must establish (1) a refusal to participate in an activity that would result in a violation of State or federal law, rule, or regulation[,] and (2) [that] the employer retaliated against the employee because of said refusal." *Roberts v. Bd. of Trs. Cmty. Coll. Dist. No. 508*, 105 N.E.3d 923, 933 (Ill. App. 2018). A different IWA provision "protects employees who complain to a government agency about an

activity that the employee reasonably believes constitutes a violation of a state or federal law, rule, or regulation." *Ibid*. (internal quotation marks omitted) (citing 740 ILCS 174/15(b)). Defendants argue that Mack neither refused to participate in unlawful activity nor reported unlawful activity in connection with her employment. Doc. 65 at 14-15. Mack asserts only that she refused to participate in unlawful activity, Doc. 80 at 6, thereby abandoning any IWA claim for reporting unlawful activity. *See Gates*, 916 F.3d at 641; *Keck Garrett*, 517 F.3d at 487; *Witte*, 434 F.3d at 1038.

Mack cannot show that the activity in which she repeatedly refused to engage—showing her supervisors Marks's edit sheets, Doc. 66 at ¶¶ 20, 28, 45, 48—was unlawful. *See Roberts*, 105 N.E.3d at 934 ("[I]n order to state a claim under the [IWA], there must be a request or demand by the employer that the employee engage in … illegal or unlawful conduct."). Nor has she shown that Pinto or May engaged in unlawful activity by inquiring about and ultimately revising Marks's January 11 time entry. Moreover, by admitting that her position required her to allow her supervisors to review edit sheets, Doc. 66 at ¶ 8-9, 11, Mack effectively concedes that the basis for her IWA retaliation claims (her refusal to do so) establishes a non-retaliatory reason (insubordination) for her discharge. *See Williams v. Office of the Chief Judge of Cook Cnty.*, 839 F.3d 617, 627 (7th Cir. 2016) ("In order to show [IWA] retaliation, a plaintiff must provide some evidence that the employer had a retaliatory motive. There is no evidence of a retaliatory motive here.") (citation omitted). Accordingly, Defendants are entitled to summary judgment on Mack's IWA claim.

## II.   Age Discrimination Claims

Mack also asserts disparate treatment and hostile work environment claims under the ADEA. Doc. 7 at p. 8. The ADEA "makes it unlawful for an employer … 'to discharge … or

otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." *Carson v. Lake Cnty.*, 865 F.3d 526, 532 (7th Cir. 2017) (quoting 29 U.S.C. § 623(a)(1)). Defendants contend that there is insufficient evidence for a reasonable factfinder to find for her on either ADEA claim. Doc. 65 at 5-7.

Under the framework set forth in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), Mack's disparate treatment claim survives summary judgment only if she has adduced evidence that, "considered as a whole," would allow a reasonable jury to find that her age caused her termination. *Id.* at 765; *see also Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 719 (7th Cir. 2018) ("Because plaintiff seeks to recover under a theory of disparate treatment, [s]he must prove, by a preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action.") (internal quotation marks omitted). To meet this burden, Mack may rely on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ortiz*, 834 F.3d 766. The *McDonnell Douglas* framework requires Mack to adduce evidence showing that she belonged to a protected age class, met her employer's legitimate expectations, suffered an adverse employment action, and was similarly situated to other employees who were not members of the protected class and who were treated better— together, her *prima facie* case—provided that Defendants fail to articulate a reasonable alternative explanation for her termination or she shows that the proffered alternative explanation is a pretext for discriminatory animus. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). That framework is just one way that the record can allow a reasonable jury to find age discrimination. *See Volling v. Kurtz Paramed. Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (noting that *McDonnell Douglas* provides "a common, but not

exclusive, method of establishing a triable issue of intentional discrimination") (internal quotation marks omitted).  The court therefore must not limit its analysis to *McDonnell Douglas* or treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the broader question whether, "consider[ing] all admissible evidence" as a whole, "a reasonable jury could find that [Mack] suffered an adverse action *because of* her age." *Skiba*, 884 F.3d at 720 (internal quotation marks omitted); *see also Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1004-05 (7th Cir. 2018) ("Although the oft-cited burden shifting framework from *McDonnell Douglas* … provides a means of organizing, presenting, and assessing circumstantial evidence, we must consider the evidence as a whole in deciding whether to grant summary judgment.") (citations and internal quotation marks omitted).

Accordingly, the court will "begin [its] assessment of the evidence by employing th[e *McDonnell Douglas*] construct and addressing first whether [Mack] has established" a genuine dispute under that framework.  *David*, 846 F.3d at 224.  If Mack fails to do so, the court will then "assess cumulatively all the evidence … to determine whether it permits a reasonable factfinder to determine that" Defendants discriminated against her due to her age.  *Ibid.*; *see also Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 631 (7th Cir. 2018) (similar).

As noted, to establish her *prima facie* case under *McDonnell Douglas*, Mack must show, among other things, that "she was meeting the defendant[s'] legitimate expectations" and that "similarly situated employees who were not members of her protected class were treated more favorably."  *Skiba*, 884 F.3d at 719.  Mack admits, however, that her employer had a legitimate expectation that she would make the edit sheets available to her supervisors for review.  Doc. 66 at ¶¶ 8-9, 11; Doc. 77 at pp. 1-2, ¶¶ 8-9, 11.  And Mack does not dispute that she repeatedly refused to produce Marks's edit sheets or that she made multiple false statements both before and

after the March 2015 disciplinary meeting. Doc. 66 at ¶¶ 20-21, 23-24, 28, 34, 38, 45-46, 48, 55. Thus, although Mack contends that she was generally an "excellent" employee. Doc. 80 at 11; *see also* Doc. 77 at p. 13, ¶¶ 36, 38, the essential point is that she has failed to show that Defendants "lied in any of the reprimands or that the events documented in the reprimands are not what caused" her "discharge." *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 663 (7th Cir. 2016); *see also Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 570 (7th Cir. 2017) ("The evidence supports [the defendant's] assertion that she believed [the plaintiff's] continuing misrepresentations … rose to the level of serious personal misconduct worthy of his termination. And th[is] court is not a super personnel department that second-guesses employer's business judgments.") (internal quotation marks omitted); *Boss*, 816 F.3d at 917 ("[W]hen an employer articulates a plausible, legal reason for its action, it is not our province to decide whether that reason was wise, fair, or even correct, … so long as it truly was the reason for its action.").

Accordingly, given her insubordinate failure to produce the edit sheets and her dishonesty, no reasonable jury could find that Mack was meeting her employer's legitimate expectations. *See Carothers v. Cnty. of Cook*, 808 F.3d 1140, 1150 (7th Cir. 2015) ("[The plaintiff] ignored [her supervisor's] reasonable requests to submit (or re-submit) the missing documentation. … Thus, [the plaintiff] did not satisfy the legitimate expectations of her employer."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014) (affirming summary judgment where the plaintiff's "violations of the District's attendance guidelines demonstrate that she was not meeting the District's legitimate expectations"); *Johnson v. Koppers, Inc.*, 726 F.3d 910, 916 (7th Cir. 2013) ("[T]he plaintiff failed to meet her employer's legitimate expectations because she *admitted* that she was insubordinate.").

Nor can Mack show that similarly situated employees who were not protected by the ADEA received more favorable treatment than she did. Due to her insubordination, Mack "is similarly situated only to other insubordinate employees." *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 478 (7th Cir. 2010); *see also Simpson*, 827 F.3d at 662 ("An employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated."). Yet Mack does not show that any other employee in her department engaged in comparable intentional misconduct, or that Marks, a custodian, defied similar job expectations. Doc. 66 at ¶¶ 73-74 (admitting that Robinson, another timekeeper about Mack's age, was suspended for "mistaken and unintentional oversights"). Accordingly, Mack's *prima facie* case under the *McDonnell Douglas* framework fails because "a reasonable jury could find neither that [Mack] met [Defendants'] expectations nor that [Defendants] treated younger workers any better." *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 454 (7th Cir. 2009); *see also Harris v. Warrick Cnty. Sheriff's Dep't*, 666 F.3d 444, 449 (7th Cir. 2012) ("In … cases in which a minority plaintiff had some shortcomings in common with a better-treated nonminority employee but was terminated for additional, distinct performance problems, we have found the comparator employee not similarly situated."); *Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009) ("Plaintiffs were fired for time card fraud: saying they took no break when they did and then suspiciously failing to remember the off-site meal when confronted. [The comparator] did not engage in either of these material actions. … Without a similarly situated employee, Plaintiffs cannot present a prima facie case … .").

Mack's disparate treatment claim fares no better when examined through the lens of the broader question of whether the evidence, considered as a whole, would allow a reasonable juror to find that age discrimination caused her termination. *See Ortiz*, 834 F.3d at 765. Although the

summary judgment record indicates that Mack was harassed by Garcia (a manager) and other coworkers, and that May did nothing in response, Doc. 79 at 4, no record evidence details that harassment or connects it with age-based animus. *See Skiba*, 884 F.3d at 718 ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.") (internal quotation marks omitted); *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 569 (7th Cir. 2012) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of [a protected characteristic].") (alterations, citation, and internal quotation marks omitted); *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) ("[The plaintiff] has presented no evidence to show that [the harassers'] treatment of her was based on her [protected characteristics]—she argues instead that 'the abusive conduct was purely personal.' This is fatal to her claim.").

Granted, Assistant Commissioner White, who was outside Mack's chain of command, repeatedly encouraged Mack to retire. Doc. 77 at p. 12, ¶ 28; Doc. 66 at ¶ 3. But discussing retirement with an employee, without more, does not constitute age discrimination. *See David*, 846 F.3d at 229 ("[E]ligibility for retirement may be based on age, years of service, or a combination of the two. [The plaintiff] has not identified any record evidence that explains how retirement eligibility is determined … . We therefore cannot equate retirement eligibility with age."). In any event, Mack has not shown whether or how White was involved in the decisionmaking process that resulted in her termination, thus rendering immaterial anything White may have said to her. *See Skiba*, 884 F.3d at 722 ("Normally, statements by a nondecisionmaker do not satisfy a plaintiff's burden of proof in an employment discrimination case.") (internal quotation marks omitted); *Martino*, 573 F.3d at 452 ("[The plaintiff] focuses on

[a supervisor's] 'oldtimer' comments, but because [that supervisor] was not a decisionmaker, these comments are only relevant if [the supervisor] had singular influence over the decisionmaker … and used that influence to cause the adverse employment action.") (alteration and internal quotation marks omitted).

Mack's ADEA hostile work environment claim fails as well. To survive summary judgment on a hostile work environment claim, a plaintiff must show that: "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class …; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Abrego*, 907 F.3d at 1015. Examining the record evidence as a whole, and even assuming (incorrectly) that White's comments were age-related, "isolated comments about [Mack's] age were neither severe [n]or pervasive enough to create an objectively hostile work environment." *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005); *see also Halloway v. Milwaukee Cnty.*, 180 F.3d 820, 827 (7th Cir. 1999) ("Although [the plaintiff] subjectively may have been offended by the comments about his retirement …, we cannot say that such comments were, when assessed objectively, sufficiently severe to create a[n ADEA hostile work environment] claim."). And even if Mack adduced evidence beyond conclusory assertions that she was harassed on other occasions, she fails to tie any such "boorish behavior" to "actionable age harassment." *Racicot*, 414 F.3d at 678; *see also Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001) ("[The ADEA plaintiff] has failed to produce evidence that the alleged offensive conduct was discriminatory."). Moreover, just as Mack has failed to show that Defendants treated similarly situated younger employees better than they treated her, she has not provided evidence of a systemically discriminatory workplace. *See Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1160 (7th Cir. 2014) ("[The plaintiff] offers

only a short and exhaustive list of allegedly hostile occurrences over her long employment at the Hospital. This list falls short of showing the kind of systematic discriminatory behavior that hostile work environment claims require.").

Because no "reasonable factfinder [could] conclude [that Mack's] age caused the adverse employment actions" or that she was subjected to actionable age-motivated workplace harassment, *Skiba*, 884 F.3d at 725, Defendants are entitled to summary judgment on Mack's ADEA claims.

## Conclusion

Defendants' motion to strike is granted in part, denied in part, and denied as moot in part, and their summary judgment motion is granted. Judgment will be entered for Defendants and against Mack.

March 25, 2019

_____
United States District Judge